UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

MRFranchise, Inc. & Mike Rafipoor

     v.

Stratford Insurance Company

Civil No. 22-cv-572-LM
Opinion No. 2024 DNH 093 P

## **O R D E R**

In this diversity action, plaintiffs MRFranchise, Inc. ("MRFranchise") and Mike Rafipoor bring suit against their former insurer, defendant Stratford Insurance Company ("Stratford"). Plaintiffs allege that Stratford breached the terms of their insurance policy when Stratford refused to defend and indemnify them in an arbitration. Plaintiffs bring three claims, each under California state law: breach of contract for failure to pay defense costs (Count I), breach of contract for failure to indemnify (Count II), and tortious breach of the duty of good faith and fair dealing (Count III).

Before the court are the parties' cross-motions for summary judgment. Doc. nos. 28 & 29. Plaintiffs move for partial summary judgment, requesting the court to rule that they are entitled to insurance coverage and therefore judgment as a matter of law on Counts I and II. Stratford moves for summary judgment on all claims, arguing that it has no obligation to pay defense costs or to indemnify Plaintiffs for the claims brought against them in arbitration. For the following

reasons, the court denies Stratford's motion (doc. no. 29) and grants Plaintiffs' motion in part (doc. no. 28).

## STANDARD OF REVIEW

A movant is entitled to summary judgment where he "shows that that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Pleasantdale Condos., LLC v. Wakefield, 37 F.4th 728, 733 (1st Cir. 2022). This same standard applies when, as here, the parties file cross-motions for summary judgment. Dixon-Tribou v. McDonough, 86 F.4th 453, 458 (1st Cir. 2023). In other words, the court reviews each motion separately and draws all reasonable inferences in favor of each respective nonmoving party. Motorists Com. Mut. Ins. Co. v. Hartwell, 53 F.4th 730, 734 (1st Cir. 2022).

## BACKGROUND

The following facts come from the parties' summary judgment filings and attached exhibits. Except where noted, the facts are undisputed.

I.  <u>MRFranchise Enters into a Franchise Agreement with Franchisees</u>

MRFranchise is the franchisor of the "Panini Kabob Grill," a restaurant chain in Southern California. Rafipoor is the founder, President, and Chief Executive Officer of MRFranchise. In 2016, James Borba, Phil Koontz, and Lindsey Koontz (the "Franchisees") inquired about opening a Panini Kabob Grill at a location in

California. On May 25, 2017, MRFranchise provided the Franchisees with a set of required disclosures in a document called the "Franchise Disclosure Document" (the "MRF Disclosure").

By way of background, both federal and state law require franchisors to provide a formal disclosure in writing (such as the MRF Disclosure) before entering into a franchise agreement.[1] Referred to as the Franchise Disclosure Document in the federal regulations, 16 C.F.R. §§ 436.2, 436.3, these disclosures are required in order to protect franchisees from deceptive practices in connection with the sale of franchises. See 16 C.F.R. § 436.2 ("[I]t is an unfair or deceptive act or practice . . . [f]or any franchisor to fail to furnish a prospective franchisee with a copy of the franchisor's current disclosure document . . . ."); Cal. Corp. Code § 31001 ("California franchisees have suffered substantial losses where the franchisor . . . has not provided full and complete information regarding the . . . prior business experience of the franchisor. It is the intent of this law to provide each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered.").

---

[1] The Federal Trade Commission ("FTC") has promulgated a set of disclosure requirements which are located at 16 C.F.R. §§ 436 & 437. This is popularly referred to as the "FTC Rule." California's state analog to the FTC Rule is the California Franchise Investment Law ("CFIL"), located at California Corporations Code §§ 31000-31516. In the context of franchise sales, the FTC regulations only preempt state laws that provide franchisees with less protection. The CFIL supplements the obligation under the FTC Rule requiring franchisors to provide franchisees with a Franchise Disclosure Document before any franchise agreement. The CFIL imposes mandatory provisions regulating the sale of the franchise, fraudulent and prohibited practices, and enforcement.

In this case, the relevant disclosure obligation concerned whether MRFranchise or any of its officers (including Rafipoor) had been held liable in—or had paid money to settle—a civil case involving allegations of "fraud, unfair or deceptive practices, or comparable allegations" in the ten years immediately preceding the disclosures. 16 C.F.R. § 436.5(c)(iii)(B). Federal law requires the franchisor to summarize the legal and factual nature of each case "in plain English." 16 C.F.R. §§ 436.1(d); 436.5(c)(3). A willful violation of this disclosure requirement is unlawful under the CFIL. See Cal. Corp. Code § 31119(a). Relevant here, in the MRF Disclosure, MRFranchise answered the question about prior litigation as follows: "No litigation is required to be disclosed . . . ." Doc. no. 32-5 at 10.

On June 15, 2017, after MRFranchise supplied the Franchisees with the MRF Disclosure, they executed a franchise agreement (the "Franchise Agreement") pursuant to which the Franchisees agreed to operate a Panini Kabob Grill franchise. Rafipoor signed the Franchise Agreement on behalf of MRFranchise.[2] The Franchise Agreement references the MRF Disclosure in several places. For example, there is a provision in the Agreement that requires the Franchisees to

---

[2] One of the Franchisees, James Borba, signed the Agreement as a 98% shareholder in the franchise. Borba also signed the Guarantee, Indemnification, and Acknowledgment pages of the Franchise Agreement on behalf of the Franchisees. The two other Franchisees (Phil and Lindsey Koontz) each held a 1% interest in the franchise.

confirm that they have received and read the MRF Disclosure and any attached exhibits. Doc. no. 32-6 at 67.[3]

In February 2018, the Franchisees entered into a separate contract with a third party, Santa Montana Investments, Inc. ("Santa Montana"), to have Santa Montana make improvements and renovations at the planned Panini Kabob Grill location. Rafipoor is the president and sole shareholder of Santa Montana. Santa Montana agreed to renovate and prepare the restaurant for operation, in exchange for the Franchisees' payment of $1,950,000.

II.    The Franchise Relationship Breaks Down

On May 3, 2019, the Franchisees opened their restaurant. By agreement, the restaurant was under the acting management of an MRFranchise entity until the Franchisees could be trained to take over operations. On August 27, 2019, MRFranchise sent the Franchisees a notice of default under the Franchise Agreement for their delay in completing the necessary training to operate the restaurant. At some point in December 2019, it became clear to the Franchisees that Phil Koontz (their would-be operating manager) was not going to obtain the necessary training and that the franchise may not survive. Borba reached out to MRFranchise to return complete control over (and sell back) the franchise to

---

[3] There are two other references to the MRF Disclosure in the Franchise Agreement. The Agreement states that "nothing herein is intended to disclaim or require Franchisee to waive reliance on any representation made in the [MRF Disclosure]." Doc. no. 32-6 at 69. And there is a provision requiring the Franchisees to acknowledge that they have not relied on any representations or projections about the success of a franchise, "except as may have been contained in the [MRF Disclosure.]" Id.

MRFranchise. The parties then began negotiating the terms of a buy-back arrangement for MRFranchise to acquire the restaurant. In the end, they could not agree on the final terms of a buy-back arrangement. On February 19, 2020, the Franchisees filed a complaint against Santa Montana and Rafipoor in a California superior court. Plaintiffs sent the Franchisees another notice of default that same day.

On May 8, 2020, MRFranchise sent the Franchisees notice that it was terminating the Franchise Agreement. On May 26, 2020, Plaintiffs initiated arbitration proceedings against the Franchisees as a group and against Borba individually. They alleged two claims: breach of the Franchise Agreement against all of the Franchisees, and a breach of guarantee against Borba.

On July 20, 2020, the Franchisees filed an arbitral counter-complaint (with sixteen causes of action) against Plaintiffs and Santa Montana. Most of the claims sounded in breach of contract and tort (including intentional and negligent misrepresentation). However, the counter-complaint also included one statutory claim alleging that MRFranchise and Rafipoor violated the CFIL in several ways, including by failing to disclose—in the MRF Disclosure—prior fraud cases against Rafipoor. Doc. no. 32-7. The instant coverage dispute concerns this counter-complaint.

III.    <u>MRFranchise's Insurance Policy with Stratford</u>

Six months earlier, on January 31, 2020, MRFranchise had applied for the liability insurance policy with Stratford that is at issue in the instant case. The

6

timing of this application occurred close in time to the Franchisees filing suit (February 19, 2020) in California state court. In the policy application ("the Application"), MRFranchise denied knowledge of "any act, error or omission" which could give rise to a claim under the proposed policy.[4] Doc. no. 37-1 at 4. To the extent any such claim existed, the Application made clear that it would be excluded from coverage under the proposed policy.

On February 13, 2020, Stratford issued a directors and officers liability insurance policy to MRFranchise, with coverage to run from February 13, 2020, to February 13, 2021 (the "Policy"). Doc. no. 28-3 at 2.

A.    Coverage Provisions and Relevant Exclusions

The Policy provides MRFranchise with coverage for:

> Loss arising from any Claim for any Wrongful Act of the Company taking place prior to the end of the Policy Period, and which is first made against the Insureds during the Policy Period . . . and is reported to the Insurer in the time and manner required by this Policy.

Id. at 18. Parallel coverage also extends to MRFranchise's executives and employees. "Wrongful Act" is defined as "any actual or alleged breach of duty, error,

---

[4] Specifically, an agent of MRFranchise answered "No" to the question: "Does the Applicant, or any director, officer, trustee, employed lawyer or employee of the Applicant know of any act, error, or omission which could give rise to a claim(s), suit(s), or action(s) under the proposed policy . . . ." Doc. no. 37-1 at 4. The Application further states that the parties agree that "if such claim(s), suit(s), investigation(s), loss(es), action(s), proceeding(s), inquiry, violation, knowledge, information or involvement exists, then . . . any claim, action, suit, investigations, loss, action, proceeding, or inquiry arising therefrom or arising from such violation, knowledge, information or involvement is excluded from the proposed coverage." Id. at 5.

misstatement, act or omission" undertaken by MRFranchise, its executives, or its

employees, as well as "any Interrelated Wrongful Act." <u>Id.</u> at 21.

With respect to defense of a claim, the Policy states that "[i]t shall be the

duty of the Insurer, and not the duty of the Insureds, to defend any Claim other

than a Wage and Hour Violation Claim," <u>id.</u> at 31, and guarantees that Stratford

"shall pay, on behalf of the Insureds, all Defense Expenses incurred in the defense

of a Claim, other than a Wage and Hour Violation Claim, that is covered, in whole

or in part, under this Policy," <u>id.</u> at 32.

The Policy also incorporates the Application, stating:

> The Insureds further agree that in the event of any
> material misstatement, misrepresentation or omission in
> the Application, there shall be no coverage under this
> Policy for any Insured who had actual or imputed
> knowledge as of the inception date of the Policy Period of
> the facts that were misstated, misrepresented or omitted
> in the Application (whether or not such Insured was aware
> that such facts were misstated, misrepresented, or omitted
> in the Application). For purposes of determining the
> applicability of this Paragraph, any knowledge possessed
> by the Chief Executive Officer, the Chief Financial Officer,
> or the General Counsel of the Named Insured shall be
> imputed to the Company, but with the exception of the
> foregoing, any knowledge possessed by an Insured shall not
> be imputed to any other Insured.

<u>Id.</u> at 16. The court hereafter refers to this provision, with the incorporated

provisions of the Application, as the "Prior Notice Exclusion."

The Policy also contains the following exclusion for intentional acts:

> The Insurer shall not be liable to pay any Loss in
> connection with any Claim:
>
> [B]rought about or contributed to by . . . the committing of
> any intentional criminal or deliberate fraudulent act, if

8

> such . . . intentional criminal or deliberate fraudulent act
> is established by a final, non-appealable adjudication in the
> underlying action. For the purpose of applying this
> exclusion, any Wrongful Act of the Chief Executive Officer
> or the Chief Financial Officer of the Company shall be
> imputed to such Company. With the exception of the
> possible imputation of Wrongful Acts described in the
> preceding sentence, no Wrongful Act of an Insured may be
> imputed to any other Insured.

Id. at 8. The court hereafter refers to this exclusion as the "Intentional Acts

Exclusion."

    The Policy also contains the following set of seven exclusions (labeled "E"

through "K"), with the two relevant exclusions in bold:

> The Insurer shall not be liable to pay any Loss arising from
> any Claim:
>
> E. arising out of, based upon or in consequence of, resulting
> from or in any way involving any violation of any
> statutory, regulatory or common law, governing any of the
> following activities: unfair trade practices, anti-trust,
> unfair competition, or tortious interference in another's
> business or contractual relationships;
>
> **F. arising out of, based upon or in consequence of,
> resulting from or in any way involving any Insured's
> performance of or failure to perform professional
> services for others; . . . .**
>
> **G. based upon or attributable to liability under any
> oral or written contract or agreement, including but
> not limited to any express warranties or guarantees,
> or liability assumed under any oral or written
> contract or agreement; provided, however, that this
> exclusion shall not be applicable to an Insured's
> alleged liability that exists in the absence of such
> contract or agreement; or to any Securities Claim[;]**
>
> H. for infringement or violation of patent, trademark, trade
> secret copyright, misappropriation, plagiarism or any
> other intellectual property rights;

9

I. arising out of, based upon or in consequence of, resulting from or in any way involving any [specific torts];

J. arising out of, based upon or in consequence of, resulting from or in any way involving . . . any violation of the Telephone Consumer Protection Act . . .; or

K. arising out of, based upon or in consequence of, resulting from or in any way involving any of the following [four actions that are not relevant].

Id. at 23-24, 41, 44. The court hereafter refers to Exclusion F as the "Prof. Services Exclusion" and Exclusion G as the "Contract Exclusion."

IV.    Stratford Denies Coverage for the Counter-Complaint

On July 30, 2020, Plaintiffs provided to Stratford copies of the Franchisees' counter-complaint. On February 22, 2021, eight months before the arbitration, Stratford notified Plaintiffs that it was denying coverage and disclaiming any duty to defend. Specifically, Stratford took the position that the Franchisees' claims are barred by: (1) the Prior Notice Exclusion because plaintiffs knew of a likely claim prior to the Policy's start date but failed to disclose it; (2) the Prof. Services Exclusion because the claims arose out of Plaintiffs providing "professional services"; and (3) the Contract Exclusion because the claims are premised on liability under the Franchise Agreement.

The arbitration took place over seven days in October 2021. Of the sixteen original counterclaims brought against Plaintiffs, only seven went to a hearing: four

breach of contract claims, two tort claims, and the statutory claim under the CFIL.[5]
On March 18, 2022, the arbitrator found in favor of Plaintiffs on all counterclaims
except for the statutory claim. On that claim, the arbitrator found that
MRFranchise's failure to disclose prior litigation against it (as required under
federal franchise regulations) constituted a misrepresentation under the CFIL.
Specifically, the arbitrator found that MRFranchise failed to disclose three prior
fraud cases against Rafipoor—all of which he had settled before issuing the MRF
Disclosure. The arbitrator found that MRFranchise's statutory violation was willful
and found Plaintiffs jointly and severally liable for damages.[6] The arbitrator
rescinded the Franchise Agreement and awarded the Franchisees $1,030,000 in
consequential damages.[7]

On June 6, 2022, Plaintiffs again requested coverage for the counter-
complaint and Stratford stood by its original denial. Plaintiffs then brought this suit
against Stratford, alleging claims for breach of the Policy for failing to defend and

---

[5] The following seven counterclaims remained: breach of the Franchise
Agreement (Count 1); breach of an oral contract related to the Franchise Agreement
(Count 2); the CFIL violation (Count 6); breach of a tenant improvement contract
(Count 8); repayment of money paid to an unlicensed contractor (Count 11);
misappropriation (Count 15); and tortious interference with a contract (Count 16).

[6] The CFIL provides that, "[a]ny person who offers or sells a franchise in
violation of [the CFIL], shall be liable to the franchisee or subfranchisor who may sue
for damages caused thereby." Cal. Corp. Code § 31300. If the violation is willful, a
franchisee may also obtain rescission as a remedy. Id.

[7] The consequential damages awarded to the Franchisees was offset by
$201,801.36, an award to Plaintiffs of "support fees" for Plaintiffs' role in taking over
and managing the business on behalf of the Franchisees.

indemnify them, and a claim for tortiously breaching the implied covenant of good faith and fair dealing.

## DISCUSSION

The parties have filed cross-motions for summary judgment. Stratford moves for summary judgment on all of Plaintiffs' claims, contending that the Policy's Contract Exclusion bars coverage for the entire counter-complaint because all claims therein stem from a contract, the Franchise Agreement. Stratford has not moved for summary judgment on any other basis.[8] Stratford argues that the Contract Exclusion absolves it of any duty to pay defense costs or to indemnify Plaintiffs. Plaintiffs move for summary judgment on Counts I and II, contending that coverage of the Franchisees' counter-complaint is not barred by any exclusion, and that Stratford therefore breached its duty to pay defense costs and its duty to indemnify.

Because resolution of this dispute hinges on the interpretation of language in the Policy, the court begins by reviewing applicable principles governing the interpretation of contracts and insurance policies, and the law governing the duty to defend, the duty to indemnify, and the implied covenant of good faith. Following

---

[8] At oral argument on the motions, Stratford argued that it was also seeking summary judgment on the bases asserted in its objection to Plaintiffs' motion for summary judgment. Under this court's Local Rules, however, a party cannot move for summary judgment by way of an objection. See LR 7.1(a) ("Objections to pending motions and affirmative motions for relief shall not be combined in one filing."). Dionne v. Fed. Nat. Mortg. Ass'n, 110 F. Supp. 3d 338, 341 (D.N.H. 2015). Stratford is therefore limited to the single ground asserted in its motion for summary judgment.

that review, the court considers whether either party is entitled to summary

judgment in its favor, beginning with Stratford's motion.

I.      California Rules for Insurance Contract Interpretation

        Both parties agree that California substantive law applies to this diversity

action. "When the parties have agreed about what law applies, a federal court

sitting in diversity need not engage in an independent choice-of-law analysis." CVS

Pharm., Inc. v. Lavin, 951 F.3d 50, 55 n.4 (1st Cir. 2020).

        Under California law, "[i]nterpretation of an insurance policy is a question of

law." Palmer v. Truck Ins. Exch., 988 P.2d 568, 572 (Cal. 1999) (quoting Waller v.

Truck Ins. Exch., Inc., 900 P.2d 619, 672 (Cal. 1995)). Insurance policies are

contracts "to which the ordinary rules of contractual interpretation apply." Id.

(quotation omitted). The interpretation of an insurance policy is governed by the

parties' mutual intention "at the time the contract is formed." Id. (quotation

omitted).

        When interpreting an insurance contract, the court must first look to the text

of the contract to discern its plain meaning. Waller, 900 P.2d at 627. "If contractual

language is clear and explicit, it governs." Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co.,

221 Cal. Rptr. 3d 711, 718 (Ct. App. 2017) (quotation omitted). "Words in an

insurance policy are to be interpreted as a layperson would interpret them, in their

ordinary and popular sense." Id. (quotation omitted). "If particular policy language

is ambiguous, it is to be resolved by interpreting the ambiguous provisions in

accordance with the insured's objectively reasonable expectations." Id. (quotation

omitted). "The proper question is whether the provision or word is ambiguous in the context of <u>this</u> policy and the circumstances <u>of this</u> case." Medill v. Westport Ins. Corp., 49 Cal. Rptr. 3d 570, 580 (Ct. App. 2006) (brackets and quotation omitted); <u>see also</u> Energy Ins. Mut., 221 Cal. Rptr. 3d at 718 ("In determining the objectively reasonable expectations of the insured, the court must interpret the language in context, with regard to its intended function in the policy." (quotation omitted)).

"An insurance policy, like any other contract, must be construed as an entirety, with each clause lending meaning to the other." Holz Rubber Co. v. Am. Star Ins. Co., 533 P.2d 1055, 1061 (Cal. 1975). "[I]t is not a court's function to select a particular definition of a single word and apply it without regard to other language in the policy." Mirpad, LLC v. Cal. Ins. Guar. Ass'n, 34 Cal. Rptr. 3d 136, 144 (Ct. App. 2005); <u>accord</u> Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins. Co., 49 Cal. Rptr. 2d 567, 571 (Ct. App. 1996) ("[T]he <u>context</u> in which a term appears is critical."). Insurance contracts are also "construed to avoid rendering terms surplusage." ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co., 22 Cal. Rptr. 2d 206, 213 (Ct. App. 1993).

"Moreover, insurance coverage is 'interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer.'" MacKinnon v. Truck Ins. Exch., 73 P.3d 1205, 1213 (Cal. 2003) (brackets and ellipses omitted) (quoting White v. Western Title Ins. Co., 710 P.2d 309, 313 (Cal. 1985) (en banc)). "The courts will not sanction a construction of the insurer's language that will defeat the very purpose or object of

the insurance." Gray v. Zurich Ins. Co., 419 P.2d 168, 178 (Cal. 1966) (in bank) (quotation omitted).

II.    Duty to Defend, Duty to Indemnify, and Duty of Good Faith

"It is well established that an insurer has a duty to defend its insured against a suit 'which potentially seeks damages within the coverage of the policy.'" Medill, 49 Cal. Rptr. 3d at 577 (quoting Gray, 419 P.2d at 176) (emphasis in Medill). "This obligation can only be excused when the third-party complaint 'can by no conceivable theory raise a single issue which could bring it within the policy coverage.'" Id. (emphasis omitted) (quoting Montrose Chem. Corp. v. Superior Ct., 861 P.2d 1153, 1160 (Cal. 1993) (in bank)). "In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." Id. (quotation omitted). "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy." Waller, 900 P.2d at 627. If, however, "extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even when the bare allegations in the complaint suggest potential liability." Id. at 628.

By contrast, the duty to indemnify "runs only to claims that are actually covered by the policy," not to claims that are only potentially covered. Crawford v. Weather Shield Mfg., Inc., 187 P.3d 424, 427 (Cal. 2008). While the duty to defend arises upon the commencement of a proceeding involving claims which may be within the policy's coverage, "the duty to indemnify does not arise until liability is

15

proven." Aluma Sys. Concrete Constr. of Cal. v. Nibbi Bros. Inc., 206 Cal. Rptr. 3d 394, 401 (Ct. App. 2016).

An insured may also bring a claim for breach of the implied covenant of good faith and fair dealing.[9] Every contract, including insurance contracts, contains an implied covenant of good faith to discourage a contracting party from inhibiting another party's rights under the contract. See Waller, 900 P.2d at 639. However, where "there is no potential for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing." Id.

The parties do not dispute that, unless an exclusion applies, Stratford had a duty to pay defense fees and to indemnify Plaintiffs for damages awarded in the arbitration. The court begins with Stratford's motion.

III.    Stratford's Motion for Summary Judgment

To prevail on its motion for summary judgment, Stratford must demonstrate that the Contract Exclusion bars coverage as a matter of law. To do so, Stratford must clear two hurdles. Stratford must show (1) that the language of the Exclusion applies, and (2) that its exception does not apply. Stratford can clear neither hurdle.

In relevant part, the Contract Exclusion and its exception (in bold) state:

> The Insurer shall not be liable to pay any Loss arising from
> any Claim . . . based upon or attributable to liability under

---

[9] Under California insurance law, an insured party may seek both tort and contract damages for a breach of the covenant of good faith. See Foley v. Interactive Data Corp., 765 P.2d 373, 390 (Cal. 1988) (in bank). A tortious breach claim, such as the claim alleged in this case, allows the insured to seek attorney's fees. Brandt v. Superior Ct., 693 P.2d 796, 798 (Cal. 1985) (in bank).

> any oral or written contract or agreement . . . ; **provided, however, that this exclusion shall not be applicable to an Insured's alleged liability that exists in the absence of such contract or agreement** . . . .

<u>Supra</u>, Background Section III.A. The court first considers whether the Contract Exclusion applies, then turns to the exception.

    A.    <u>The Franchisees' CFIL Claim Is Not "Based Upon or Attributable to Liability Under" the Franchise Agreement</u>

The Contract Exclusion bars coverage for claims "based upon or attributable to liability under any oral or written contract or agreement." Resolution of the parties' dispute turns on whether the Franchisees' CFIL claim is "based upon or attributable to liability under" the Franchise Agreement. To determine the contracting parties' intent as to the meaning of this language, the court looks first to the plain text. <u>See, e.g.</u>, Waller, 900 P.2d at 627. The California Supreme Court has used Webster's Dictionary to help it discern the plain, ordinary meaning of text. <u>See, e.g.</u>, Smith v. Superior Ct., 137 P.3d 218, 222 (Cal. 2006).

The dictionary definition of the word "base" is "to make or form a foundation for." <u>Base</u>, <u>Webster's Third New International Dictionary</u> 180 (1993). The phrase "based upon" is therefore synonymous with "founded upon" or "made upon." The definition of "attribute" is "to explain as caused or brought about by." <u>Attribute</u>, <u>Webster's Third New International Dictionary</u> 142. Like the phrase "based upon," the phrase "attributable to" refers to the genesis or cause of something. Therefore, a purely textual reading of the Contract Exclusion suggests that a claim "based upon

or attributable to liability under any [contract]" is one that originates from or is caused by a party's legal responsibility or obligation under a contract.[10]

What is not clear from this language, however, is how close the nexus between the insured's liability and the contract must be in order for the exclusion to apply. According to Stratford, the Contract Exclusion bars coverage when the insured's liability has only an incidental, or minimal, causal connection to the contract. Stratford argues that the Contract Exclusion applies because all of the Franchisees' counterclaims are related to the conduct that formed the basis for the franchisees' breach of contract counterclaim. Stratford's interpretation is, however, untethered from the language of the Exclusion and the Policy as a whole.

In addition to the rule requiring the court to start with the text's plain meaning, several other bedrock principles of textual construction aid the court here. First, and most important in this case, the court must look to the entirety of the contract "with each clause lending meaning to the other." Holz Rubber, 533 P.2d at 1061; accord, e.g., Medill, 49 Cal. Rptr. 3d at 582 ("Language in a contract must be construed in the context of that [contract] as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."); Mirpad, 34 Cal. Rptr. 3d at 144 ("[I]t is not a court's function to select a particular definition of a single word and apply it without regard to other language in the policy."). In

---

[10] The meaning of the word "liability" is not in dispute. "Liability" means the "quality state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." Liability, Black's Law Dictionary (11th ed. 2019).

applying this "context canon," California courts avoid constructions that would

produce redundancies and surplusage in policies. See AIU Ins. Co. v. Superior Ct.,

799 P.2d 1253, 1268 (Cal. 1990) (in bank); ACL Techs., 22 Cal. Rptr. 2d at 213.

Here, the canon requiring that the court read language in the context of the

whole contract (and not in isolation) compels a conclusion that the Contract

Exclusion requires more than merely a minimal or incidental factual connection.

Medill, 49 Cal. Rptr. 3d at 580 (stating that courts "must consider "the context of

this policy and the circumstances of this case" (quoting E.M.M.I. Inc. v. Zurich Am.

Ins. Co., 84 P.3d 385, 389 (Cal. 2004))). The Contract Exclusion is one in a list of

several other exclusions, most of which bar coverage using broad nexus language

not included in the Contract Exclusion. The set of exclusions (with the Contract

Exclusion in bold) state:

> The Insurer shall not be liable to pay any Loss arising from
> any Claim:
>
> E. arising out of, based upon or in consequence of, resulting
> from or in any way involving any violation of any
> statutory, regulatory or common law, governing any of the
> following activities: unfair trade practices, anti-trust,
> unfair competition, or tortious interference in another's
> business or contractual relationships;
>
> F. arising out of, based upon or in consequence of, resulting
> from or in any way involving any Insured's performance of
> or failure to perform professional services for others; . . . .
>
> **G. based upon or attributable to liability under any
> oral or written contract or agreement, including but
> not limited to any express warranties or guarantees,
> or liability assumed under any oral or written
> contract or agreement; provided, however, that this
> exclusion shall not be applicable to an Insured's**

> **alleged liability that exists in the absence of such contract or agreement; or to any Securities Claim[;]**
>
> . . .
> I. arising out of, based upon or in consequence of, resulting from or in any way involving any [specific torts];
>
> J. arising out of, based upon or in consequence of, resulting from or in any way involving . . . any violation of the Telephone Consumer Protection Act . . .; or
>
> K. arising out of, based upon or in consequence of, resulting from or in any way involving any of the following [four actions that are not relevant].

Supra, Background Section III.A.

Specifically, all five of these other exclusions (Exclusions E, F, I, J, and K) begin with the following phrases (underlined words are not present in the Contract Exclusion): coverage is barred for "any claim arising out of, based upon or in consequence of, resulting from or in any way involving any [enumerated act]." Id. (emphasis added). The court must read the nexus language in the Contract Exclusion (i.e., "based upon or attributable to") in the context of the nexus language in the other exclusions (i.e., "or in any way involving"). The Contract Exclusion is the only exclusion in the list of seven that uses the phrase "based upon or attributable to" to describe the factual nexus required for the exclusion to apply.[11] And, it is the only exclusion with nexus language that does not include the broad clause "or in any way involving."

---

[11] Exclusion H is unique and does not have any "arising from" nexus language. It bars coverage for any claims "for infringement or violation of patent, trademark, trade secret copyright, misappropriation, plagiarism or any other intellectual property rights." See supra Background Section III.A.

Reading the Contract Exclusion in the context of these other exclusions suggests that the Contract Exclusion requires a closer relationship between the insured's liability and the circumstance barring coverage than does its neighboring exclusions. Stratford knew how to draft a broad exclusion in the Policy—as it did with the other immediately surrounding exclusions—but elected not to use that broad nexus language in the Contract Exclusion. "[E]xclusionary clauses are interpreted narrowly against the insurer." MacKinnon, 73 P.3d at 1213 (quotation omitted). Had Stratford wanted the Contract Exclusion to apply broadly and whenever the liability was "in any way involving" a contract, it could have included—and knew how to include—that language in the Contract Exclusion.

The rule against surplusage provides further support for a narrow reading of the Contract Exclusion. To read the phrase "based upon or attributable to" as broadly as Stratford asserts would render meaningless the broad language present in the other exclusions (i.e., "in any way involving"). The rule against surplusage requires that the court give meaning to the broad language in the surrounding exclusions, AIU Ins. Co., 799 P.2d at 1268, in light of its absence in the Contract Exclusion. Thus, the rule against surplusage supports an interpretation of the Contract Exclusion as requiring more than an incidental nexus between a contract and the insured's liability.

An additional canon that supports a narrow interpretation of the Contract Exclusion is the California Supreme Court's instruction that courts should avoid interpretations that would "defeat the very purpose or object of the insurance."

Gray, 419 P.2d at 179 (quotation omitted). Barring coverage for a claim with an only incidental connection to a contract would swallow Plaintiffs' otherwise comprehensive coverage, particularly in a contract-dependent business such as franchising. Interpreting the exclusion narrowly, however, gives effect to the Policy's purpose: protecting MRFranchise and its employees.

These bedrock principles of construction compel a conclusion that the Contract Exclusion does not apply here. While most of the counterclaims sounded in breach of contract and torts pertaining to the Franchise Agreement—such that those claims would be "based upon or attributable to liability under" the Franchise Agreement—the one claim for which Plaintiffs were found liable was not "based upon or attributable to liability under" that (or any) contract. Plaintiffs' liability here stems from the single statutory claim alleging a violation of the CFIL. This claim was premised on Plaintiffs' misrepresentations in the MRF Disclosure. The liability for that claim was therefore "based upon or attributable to" Plaintiffs' misrepresentations in that document. The liability did not in any way flow from the Franchise Agreement. Indeed, the MRF Disclosure is separate from and independent of the Franchise Agreement. While the MRF Disclosure has a factual relationship to the Franchise Agreement, there is no direct (or causal) nexus between Plaintiffs' statutory liability and the Agreement.

Stratford urges the court to ignore the context and language of this Policy and to apply a line of California cases which—Stratford contends—holds that the phrase "based upon" requires only a minimal or incidental connection between the

liability and a contract. The court agrees that there is a line of California intermediate appellate cases that have broadly interpreted the phrases "arising out of," "arising from," and "based upon" in insurance policies. See, e.g., Health Net, Inc. v. RLI Ins. Co., 141 Cal. Rptr. 3d 649, 673 (Ct. App. 2012); Medill, 49 Cal. Rptr. 3d at 578-79; Century Transit Sys., 49 Cal. Rptr. 2d at 571 n.4. Specifically, California intermediate appellate courts interpret "arising out of" or "arising from" to "broadly link[] a factual situation with the event creating liability, . . . connot[ing] only a minimal causal connection or incidental relationship." Medill, 49 Cal. Rptr. 3d at 578-79; see also Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am., 10 F. App'x 438, 439-40 (9th Cir. 2001) ("This is true even when the term is used in an exclusionary provision and a broad interpretation results in limiting coverage."). This caselaw comes from California intermediate appellate courts, e.g., Medill, 49 Cal. Rptr. 3d at 578-79, and federal courts applying those cases, e.g., Cont'l Cas. Co. v. City of Richmond, 763 F.2d 1076, 1080 (9th Cir. 1985).

These courts have also extended this broad reading to the phrase "based on." See Century Transit Sys., 49 Cal. Rptr. 2d at 571 n.4 ("In our view the term 'based on' has the same effect as 'arising out of.'"); see also Foster Farms, LLC v. Everest Nat'l Ins. Co., 670 F. Supp. 3d 953, 966 (N.D. Cal. 2023) ("In California, the clause 'based upon' is given the same broad reading as 'arising out of.'" (quotation omitted)). When either phrase is present in an exclusion, California's intermediate appellate courts examine the conduct underlying the claim for which coverage is sought, rather than the legal theories upon which the claim relies, to determine

whether an exclusion applies. See, e.g., Century Transit Sys., 49 Cal. Rptr. 2d at 571 n.4.

To date, however, the court has not located—and the parties have not cited—any California case interpreting language in a contract exclusion that is materially similar to this Contract Exclusion. And the California appellate cases on which Stratford relies involve policies with exclusions written more broadly than the language at issue in this Policy. For example, in Medill v. Westport Insurance Co., the policy barred coverage for claims "arising out of breach of any contract, whether oral, written or implied." 49 Cal. Rptr. 3d at 575. However, the policy in Medill defined "arising out of" to mean "based upon, arising out of, or in connection with." Id. (emphasis added). Thus, the language "in connection with" provided textual support for the holding. Likewise, in Southgate Recreation and Park District v. California Ass'n for Park and Recreation Insurance, an exclusion barred coverage for claims "arising out of or related to" construction contracts. 130 Cal. Rptr. 2d at 733 (emphasis added). It is no surprise, therefore, that the court in Southgate construed the required factual nexus broadly. The language at issue in Southgate, like that in Medill, was unambiguous in that the nexus between the liability needed only to be "related to" a contract.

Stratford also relies on a number of federal cases to support its argument that California law construes the phrases "based upon" and "arising under" as synonymous, and requires only a minimal or incidental nexus to trigger insurance exclusions. See, e.g., Office Depot, Inc. v. AIG Specialty Ins. Co., 829 F. App'x 263,

263 (9th Cir. 2020); L.A. Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 801 (9th Cir.

2017); Continental Cas., 763 F.2d at 1080; Foster Farms, 670 F. Supp. 3d at 966;

AKN Holdings, LLC v. Great Am. E & S Ins. Co., No. 2:21-cv-02216-SB-E, 2021 WL

2325647, at *2 (C.D. Cal. May 14, 2021).

Each case, once again, is distinguishable based on the broad nexus language

in those exclusions.[12] See Office Depot, Inc., 829 F. App'x at 263 (precluding

coverage for claims "alleging, arising out of or resulting, directly or indirectly, from

any liability or obligation under any contract or agreement or out of any breach of

contract" (emphasis added)); L.A. Lakers, 869 F.3d at 800 (excluding coverage for

claims "based upon, arising from, or in consequence of . . . [an] invasion of privacy"

(emphasis added)); Continental Cas., 763 F.2d at 1079 (barring coverage for loss "in

connection with any claim . . . arising directly or consequentially from" physical or

mental injury, property damage, or tort (emphasis added)); AKN Holdings, 2021 WL

2325647, at *2 (excluding coverage for claims "based upon, arising from, or in any

way related to any actual or alleged breach of contract" (emphasis added)); Church

---

[12] Stratford also cites to Nestle USA v. Travelers Casualty and Surety Co. of America, in which the Ninth Circuit summarily affirmed the district court's grant of summary judgment in favor of the insurer. 10 F. App'x at 440. In that case, however, the Ninth Circuit did not analyze the full exclusionary language. Id. at 439-40. In a short, two-page decision, the court only analyzed "arising out of," without additional context. Id. Nestle is, therefore, unhelpful for interpreting the language in the Contract Exclusion before this court. Likewise, Stratford relies on Trenches, Inc. v. Hanover Insurance Co., No. SACV 12-627 AG (RNBx), 2012 WL 12507967, at *6 (C.D. Cal. Aug. 10, 2012), which construes "based upon" and "arising from" broadly to require only an incidental nexus between the liability and contract. However, the contract in that case—a settlement agreement—is unlike the Policy at issue here. See Trenches, 2012 WL 12507967, at *2. Moreover, the reasoning of Trenches is conclusory and not particularly persuasive for that reason. See id. at *6-7.

Mut. Ins. Co. v. U.S. Liab. Ins. Co., 347 F. Supp. 2d 880, 884 (barring coverage for

"any Claim made against any Insured arising out of, directly or indirectly resulting

from or in consequence of, or in any way involving . . . any actual or alleged breach

of contract" (emphasis added)).

But even if the analyses deployed in these cases were applied here, Stratford

would fare no better. These cases generally reason that, when the phrase "arising

out of" or "based upon" appear in an exclusion, the court should determine the

exclusion's applicability by comparing the conduct giving rise to the liability for

which coverage is sought with the category of conduct to which the exclusion

applies. See, e.g., Medill, 49 Cal. Rptr. 3d at 578-79. Importantly, however,

"California courts have clarified that some causal connection is necessary" between

the excluded conduct and the conduct giving rise to the liability for which coverage

is sought. Foster Farms, 670 F. Supp. 3d at 966; see also Acceptance Ins. Co. v.

Syufy Enterps., 81 Cal. Rptr. 2d 557, 329 (Ct. App. 1999) (suggesting that the

required causal connection is somewhere between but-for causation and proximate

cause). Thus, if the court were to apply the analysis urged by Stratford, it would

discern whether the conduct giving rise to liability in the arbitration—the CFIL

violation—bears a causal connection with the category of conduct to which the

exclusion applies—breach of contract.

The CFIL violation bears no causal connection to a breach of contract. The

franchisees' CFIL claim alleged that Plaintiffs failed to disclose certain information

in the MRF Disclosure regarding Rafipoor's civil litigation history in violation of

statutory law. The CFIL requires these disclosures in connection with the sale or offer of a franchise, regardless of whether a contract is ultimately executed. See Cal. Corp. Code §§ 31300, 31202. Indeed, the conduct upon which the Franchisees sought to hold Plaintiffs liable under the CFIL was entirely different conduct for which they sought to hold Plaintiffs liable for breach of contract—and the Franchisees' breach-of-contract claims were ultimately unsuccessful.

The Northern District of California's recent opinion in Foster Farms is instructive. The plaintiffs in Foster Farms were large-scale producers of poultry products. 670 F. Supp. 3d at 956-57. After the plaintiffs were named as defendants in various antitrust lawsuits alleging anticompetitive conduct in connection with the production and sale of its chicken products, they obtained insurance coverage providing coverage for antitrust suits. Id. at 957-61. The policy, however, specifically excluded any claim "based upon, arising out of, or attributable to" the previously instituted chicken antitrust lawsuits. Id. at 962.

Subsequent to issuance of the policy, the plaintiffs were named as defendants in a series of antitrust actions related to their turkey products. Id. at 959. When plaintiffs sought coverage, the insurer denied coverage pursuant to the above-quoted exclusions. Id. at 963. Plaintiffs thereafter instituted an action seeking a declaration that the exclusion did not apply to the turkey antitrust suits. Id.

While noting that the phrases "arising from" and "based upon" are "consistently given a broad interpretation" by California courts "and broadly excludes from coverage claims with a minimal causal connection . . . to the

[excluded] actions or allegations," the court nevertheless ruled that the exclusions did not apply as a matter of law because "[n]one of the claims in the Turkey Litigation Suits . . . have sufficient causal connection with the claims, facts, circumstances, acts, or allegations in the Chicken Antitrust Suits." Id. at 966-67 (quotation omitted). While both sets of cases contained allegations of using certain reports to engage in price-fixing with competitors in a similar manner with similar goals, "the allegations in the Turkey cases are independent from the facts and circumstances of the Chicken cases." Id. at 967. More critically, there was no evidence "that the alleged anticompetitive [behavior] in the chicken market caused similar anticompetitive behavior in the turkey market." Id. Ultimately, because the sets of suits premised liability on separate and distinct acts, they lacked a causal connection triggering the at-issue exclusion—even though the allegations between the chicken suits and the turkey suits were similar. Id.

Here, while both the CFIL claim and the franchisees' breach-of-contract claims relate to the Franchise Agreement, there is no evidence that the conduct found to have violated the CFIL (nondisclosure of statutorily required information) caused the conduct alleged by the franchisees to amount to breach of contract. The Franchisees' breach-of-contract claims generally focused on conduct such as not opening the restaurant on time and not providing on-site training after the restaurant opened, conduct without causal connection to the CFIL violation. Thus, even if the court were to ascribe the broad reading of "based upon" to the Contract

Exclusion that Stratford urges, Stratford would still not be entitled to judgment as a matter of law.

In sum, the Contract Exclusion is different in fundamental respects from the exclusions analyzed in the California intermediate appellate cases (and the federal cases citing those state cases). The nexus language in the Contract Exclusion is narrower than the language in cases like <u>Southgate</u> or <u>Medill</u>. And the Contract Exclusion is located among a number of other exclusions with nexus language providing additional textual support for a narrow interpretation. Stratford has not cited any California case interpreting the same kind of policy language as in this case.

In reaching its conclusion, the court is guided by the California Supreme Court's directive that courts must infer the mutual intent of the parties, "if possible, <u>solely</u> from the written provisions of the contract." <u>TRB Invs., Inc. v. Fireman's Fund Ins. Co.</u>, 145 P.3d 472, 477 (Cal. 2006) (emphasis added). Considering the plain language of the Contract Exclusion, the context in which it appears in the Policy, the rule against surplusage, the rule requiring exclusions to be read narrowly, and the purpose of the Policy, the court finds the Exclusion is too narrow to encompass statutory liability that has only an incidental nexus to a contract.

B.    The Exception to the Contract Exclusion Applies Here

Even if Stratford could show that the language of the Contract Exclusion applies, it still must show that its exception does not. The exception to the Contract Exclusion states that "this exclusion shall not be applicable to an Insured's alleged liability that exists in the absence of such contract or agreement . . . ." <u>Supra</u>,

Background Section III.A. Thus, this Exclusion does not apply to liability that exists independent of a contract.

The arbitrator found Plaintiffs liable only for a violation of the CFIL. The arbitrator found that Plaintiffs violated that law by failing to disclose to the Franchisees prior litigation involving "allegations of fraud . . . or comparable allegations." 16 C.F.R. § 436.5(c)(iii)(B). As noted, by the terms of the statute, a contract is not a prerequisite for liability; a violation may occur from a mere offer. See Cal. Corp. Code § § 31300, 31202. Here, Plaintiffs' liability flows from this California statute, is based on a document (the MRF Disclosure) that is separate and distinct from any contract, and is based on conduct that predated the Franchise Agreement. Because Plaintiffs' alleged liability under the CFIL exists in the absence of a contract, the CFIL claim falls squarely within the exception to the Contract Exclusion.

The existence of Plaintiffs' liability in the absence of a contract is not merely theoretical. As a remedy for the Franchisees' statutory claim, the arbitrator rescinded the Franchise Agreement. Despite the Agreement's rescission, Plaintiffs' liability under the CFIL still exists. Indeed, because the arbitrator rescinded the Franchise Agreement, it is as if the Agreement never existed. See Cal. Civ. Code § 1688 ("[a] contract is extinguished by its rescission"); Little v. Pullman, 162 Cal. Rptr. 3d 74, 82 (Ct. App. 2013) ("Once a contract has been rescinded it is void ab initio, as if it never existed."); Sharabianlou v. Karp, 105 Cal. Rptr. 3d 300, 310 (Ct. App. 2010) (remedy of rescission "terminates further liability, and restores the

parties to their former positions by requiring them to return whatever consideration they have received"). The arbitrator recognized this; given the franchisees' decision to seek rescission as a remedy for the CFIL violation, the arbitrator declined to enter judgment for the franchisees on their contract claims in part because the franchisees could not "inconsistently seek to enforce an alleged breach of the Franchise Agreement which has been rescinded." Doc. no. 32-2 at 26. For these reasons, the exception to the Contract Exclusion applies, and Stratford cannot rely on that Exclusion to bar coverage.

In sum, the court finds that the Contract Exclusion does not bar coverage for Plaintiffs on the CFIL claim, and that—in any event—the exception to the Contract Exclusion applies here. Accordingly, Stratford has failed to demonstrate that it is entitled to judgment as a matter of law. The court therefore denies Stratford's motion for summary judgment.

IV.    <u>Plaintiffs' Cross-Motion for Summary Judgment</u>

Plaintiffs cross-move for summary judgment, arguing that they are entitled to judgment as a matter of law because no exclusion bars coverage under the Policy. In response, Stratford asserts that several exclusions—in addition to the Contract Exclusion—prevent Plaintiffs from obtaining summary judgment in their favor. Having already concluded that the Contract Exclusion does not preclude coverage for Plaintiffs' claims, <u>see</u> <u>supra</u> Discussion Section III, the court grants Plaintiffs' motion as to that Exclusion. The court now considers the three other exclusions Stratford raises in its objection to Plaintiffs' motion for summary judgment: the

31

Prof. Services Exclusion, the Prior Notice Exclusion, and the Intentional Acts Exclusion.

      A.     <u>The Prof. Services Exclusion</u>

Stratford first contends that Plaintiffs are not entitled to summary judgment because the Prof. Services Exclusion applies. The Prof. Services Exclusion bars coverage for "any Claim arising out of, based upon or in consequence of, resulting from or in any way involving any Insured's performance of or failure to perform professional services for others . . . ." <u>Supra</u> Background Section III.A.

While the term "professional services" is not defined in the Policy, it has a "generally accepted meaning" in the context of an insurance policy. <u>See</u> <u>Energy Ins. Mut.,</u> <u>221 Cal. Rptr. 3d at 719</u>. Courts have applied professional services exclusions "broadly to bar coverage for damages resulting from a wide range of professional services that extend beyond those traditionally considered 'professions,' such as medicine, law, or engineering." <u>Id.</u> at 720 (quotation omitted). To constitute a professional service under California law, a service must involve "specialized knowledge, labor, or skill, and the labor or skill involved [must be] predominantly mental or intellectual, rather than physical or manual." <u>Id.</u> at 719 (quotation omitted). Examples of professional services range from ear piercing, plumbing, and chiropractic treatment, to escrow services, surveying land, drilling, and supervision of the location of pipelines. <u>Id.</u> at 720 (collecting cases).

The Prof. Services Exclusion does not appear on its face to apply to the conduct of Plaintiffs in their role as franchisors. Fundamentally, a franchise is a

business relationship, akin to an investment or a partnership. See Thueson v. U-Haul Internat'l, Inc., 50 Cal. Rptr. 3d 669, 672 (Ct. App. 2006); see also Cal. Corp. Code § 31005(a)(1)-(3) (defining a "franchise" as a contractual arrangement whereby a franchisee is granted certain rights to engage in business pursuant to the franchisor's trademark and brand). Indeed, "professional liability policies generally do not cover . . . business management activities [or] business decisions of a nonprofessional nature." Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc., 820 F.3d 36, 42 (1st Cir. 2016) (applying Massachusetts' construction of "professional services," which is materially similar to California's). Stratford argues, however, that — as part of the Franchise Agreement — Plaintiffs promised but failed to perform a professional service for the Franchisees. Specifically, Stratford contends that Plaintiffs agreed to provide the Franchisees with the training and resources to run a franchise, which requires the "specialized skill" that qualifies under state law as "professional service." Stratford asserts that the Franchisees' claims arise out of Plaintiffs' failure to provide the training and resources they needed to run the Franchise.

Stratford's argument might succeed if the claim that generated Plaintiffs' liability was "in any way" related to Plaintiffs' failure to honor its promise to provide training and resources.[13] The claim for which Plaintiffs seek coverage,

---

[13] Stratford is correct that some of the claims asserted in the Franchisees' complaint included allegations that involved Plaintiffs' failure to provide those training and services. But the relevant question is whether the claims triggering coverage under the Policy involve "in any way" the performance of professional services. They do not.

however, arose from MRFranchise's misrepresentations in the MRF Disclosure and
its violation of the CFIL. See Medill, 49 Cal. Rptr. 3d at 577 (duty to defend
triggered when insurer is notified of "a suit which potentially seeks damages within
the coverage of the policy" unless the insurer demonstrates that "the third party
complaint can by no conceivable theory raise a single issue which could bring it
within policy coverage" (emphasis and quotations omitted)). It is undisputed that
the misrepresentations in the MRF Disclosure preceded the franchise relationship.
Even read favorably to Stratford, the record reveals that MRFranchise's liability
under the CFIL is in no way related to its alleged failure to provide training and
resources to the Franchisees. See EFGroupATL, LLC v. Eat Fit Go Healthy Foods,
LLC, No. 8:20-CV-286, 2020 WL 7493220, at *7 (D. Neb. Dec. 21, 2020) (noting a
paucity of cases "in which misrepresentations made during the course of
negotiations were deemed . . . professional services").

      The Prof. Services Exclusion does not apply to bar coverage here. Plaintiffs
are, therefore, entitled to judgment as a matter of law on the non-applicability of
this Exclusion.

      B.    The Prior Notice Exclusion

      Stratford next contends that summary judgment is precluded by the Prior
Notice Exclusion, which bars coverage for claims an insured knew or had notice of
before obtaining insurance. As the movant, Plaintiffs must show that there is no
genuine factual dispute as to whether they knew—when they applied for the Policy
on January 31, 2020—of an "act, error, or omission which could give rise to a claim."

Doc. no. 37-1 at 4. Plaintiffs contend that there is no evidence that they were, in fact, aware of any potential claim.

Under California law, the language used in the Prior Notice Exclusion requires that the insured be subjectively "aware of acts that caused a . . . claim to be filed against' it." Associated Indus. Ins. Co., Inc. v. McNicholas & McNicholas LLP, 495 F. Supp. 3d 869, 876 (C.D. Cal. 2020) (quoting Weddington v. United Nat'l Ins. Co., No. C 07-1733 SBA, 2008 WL 590512, at *5 (N.D. Cal. Feb. 29, 2008)). In addition, the acts must be of a nature that would put a reasonable professional on notice that a potentially meritorious claim could result. Id. On this record, there is sufficient evidence (viewed favorably to Stratford) from which a reasonable jury could find that Plaintiffs knew of a potential claim stemming from their disputes with the Franchisees. The timing of these early disputes raise a material factual question about whether Plaintiffs had actual knowledge of a potential claim prior to January 31, 2020.

Specifically, several months after the franchise opened (in August 2019), Plaintiffs issued the Franchisees a notice of default under the Franchise Agreement due to the Franchisees' failure to complete their training. The Franchisees struggled to "operat[e] the franchise in accordance with [Plaintiffs'] specifications," which led to Plaintiffs assuming control of the restaurant. Doc. no. 28-2 ¶ 7. Plaintiffs and the Franchisees then attempted to enter into a buy-back agreement. However, disagreements ensued over the terms of the buy-back. When Rafipoor asked if the Franchisees wanted to proceed with the buy-back, Borba responded

that the Franchisees would seek damages for breach of the Franchise Agreement if Rafipoor attempted to close the restaurant.

On February 19, 2020, six days after the Policy went into effect, the Franchisees filed suit in California state court against Rafipoor and Santa Montana for claims related to the franchise relationship. That day, Plaintiffs gave the Franchisees another notice of default. Thus, within a period of roughly six months, the relationship between Plaintiffs and the Franchisees had devolved into litigation. A reasonable jury could consider this timeline of events to infer that Plaintiffs knew, before January 31, 2020, that a lawsuit could ensue.

Additionally, in the Franchisees' counter-complaint, the Franchisees alleged that they contacted Rafipoor about potential contract breaches before January 31, 2020. For example, the Franchisees alleged that discussions in 2019 about the buy-back occurred "after <u>numerous oral and written correspondence</u> with Rafipoor related to his failure to live up to his oral and . . . written promises." Doc. no. 28-5 ¶ 57 (emphasis added). The Franchisees also alleged that after "continuing to complain" to MRFranchise's representatives about violations of the Franchise Agreement, Rafipoor (on behalf of MRFranchise) offered to buy back the restaurant. <u>Id.</u> ¶ 58. Although Rafipoor states in his affidavit that he first learned of a breach of contract allegation from Borba on February 18, 2024, the Franchisees' allegations suggest otherwise. At this stage, the court cannot "weigh evidence or make credibility determinations." <u>Taylor v. Gallagher</u>, 737 F.2d 134, 137 (1st Cir. 1984).

Reading these facts favorably to Stratford, a reasonable jury could conclude that Plaintiffs knew on January 31, 2020, about acts or omissions that could give rise to a claim. Under this view of the evidence, the Prior Notice Exclusion would bar coverage. Therefore, Plaintiffs have failed to show there is no genuine dispute of material fact as to the applicability of the Prior Notice Exclusion. On that issue, then, the court denies Plaintiffs' cross-motion for summary judgment.[14]

C.    The Intentional Acts Exclusion

Stratford also argues that the Policy's Intentional Acts Exclusion precludes summary judgment in Plaintiffs' favor.[15] The Policy's Intentional Acts Exclusion

---

[14] Stratford also relies on the findings of the arbitrator to argue that the record contains sufficient evidence for a jury to find that Rafipoor had prior knowledge of his own fraud (i.e., the CFIL violation)—at the time the MRF Disclosure was provided to the Franchisees—and therefore Rafipoor had notice of a potential claim for that fraud before January 31, 2020. The problem with this argument is that the arbitrator made a specific finding that—while the evidence established MRF Franchise's liability under CFIL—it was insufficient to show that Rafipoor committed a willful or knowing CFIL violation. The arbitrator concluded that one of MRF Franchise's executives was responsible for the fraudulent MRF Disclosure (hence the finding that MRFranchise was liable), but that the record did not establish that Rafipoor was that executive. The parties have not briefed to the court's satisfaction the interplay between the court's obligations, on the one hand, to construe the record favorably to Stratford here (as the nonmovant) while also, on the other, to give preclusive effect to the findings of the arbitrator. See Exec. Risk Indem., Inc. v. Jones, 89 Cal. Rptr. 3d 747, 757 (Ct. App. 2009) (holding it is "well settled" under California law that an insurer who elects not to defend, after receiving notice, is bound by the tribunal's material findings of fact). Since the record contains other facts sufficient to deny summary judgment on this exclusion, the court leaves this precise question for another day.

[15] Stratford also relies on a statutory exclusion which states that "[a]n insurer is not liable for a loss caused by the wilful act of the insured." . In California, this statutory exclusion is implied in all insurance policies. J.C. Penney Casualty Ins. Co. v. M.K., 804 P.2d 689, 694 (Cal. 1991). Courts rely on § 533 to interpret intentional act exclusions such as the one at issue here. See Delgado v. Interinsurance Exch. Of Auto. Club of S. Cal., 211 P.3d 1083, 1090 (Cal. 2009).

states in relevant part that Stratford "shall not be liable to pay any Loss in connection with any Claim . . . brought about or contributed to by . . . the committing of any intentional criminal or deliberate fraudulent act, if such . . . intentional criminal or deliberate fraudulent act is established by a final, non-appealable adjudication in the underlying action." Doc. no. 32-1 at 8. The exclusion further provides that no insured's intentional criminal or deliberate fraudulent act may be imputed to another insured (subject to certain exceptions not relevant here). Id. This kind of exclusion "is treated as having the same meaning as the language in Insurance Code section 533, which provides that an insurance company is not liable for a loss caused by a willful act of the insured." Delgado v. Interinsurance Exch. of Auto. Club of S. Cal., 211 P.3d 1083, 1090 (Cal. 2009); Primary Color Sys. Corp. v. Hiscox Ins. Co., Inc., 654 F. Supp. 3d 982, 988 (C.D. Cal. 2023) (applying the willfulness standard from § 533 to an exclusion barring coverage for "any deliberate criminal or deliberate fraudulent act" (emphasis omitted)), aff'd, No. 23-55199, 2024 WL 489171 (9th Cir. Feb. 8, 2024).

In this case, the arbitrator found that MRFranchise, as a corporate entity, willfully violated the CFIL by failing to disclose information about prior litigation in the MRF Disclosure. However, the arbitrator found there was "insufficient evidence to find Rafipoor, himself, was the particular agent of" MRFranchise that decided to intentionally omit information about that litigation from the Disclosure. Doc. no. 32-2 at 19 (emphasis omitted). Accordingly, the arbitrator concluded there was insufficient evidence to find that Rafipoor willfully violated the CFIL. Plaintiffs

argue that the Intentional Acts Exclusion does not preclude coverage for Rafipoor because the arbitrator did not find that Rafipoor committed an intentional criminal or deliberate fraudulent act and because the exclusion expressly prohibits MRFranchise's intentional act from being imputed to Rafipoor. Moreover, since the arbitrator held Rafipoor jointly and severally liable for the CFIL violation, plaintiffs contend that the full amount of the final award is covered despite the Intentional Acts Exclusion.

Plaintiffs' argument has merit. The Intentional Acts Exclusion precludes coverage of an insured's intentional criminal or deliberate fraudulent act. And Section 533 precludes coverage of an insured's "wilful" act. Here, Rafipoor was not found to have committed an intentional criminal or deliberate fraudulent act, or to otherwise have acted willfully, and MRFranchise's intentional acts may not be imputed to Rafipoor by the plain terms of the exclusion. Nevertheless, he was held jointly and severally liable for the arbitral award. Applying the Intentional Acts Exclusion or Section 533 to bar coverage of Rafipoor's liability would result in a denial of coverage despite the arbitrator's failure to find that Rafipoor committed a willful CFIL violation. Such a result would be inconsistent with a reasonable insured's interpretation of the Intentional Acts Exclusion, and with Section 533's recognition that an insurer may be liable for an insured's negligent acts, even though it may not be liable for an insured's willful acts. See Cal. Ins. Code § 533.

Stratford nevertheless contends that the Intentional Acts Exclusion bars coverage of Rafipoor's liability. Stratford points out that the arbitrator's basis for

holding Rafipoor jointly and severally liable for the CFIL violation was the
arbitrator's finding that Rafipoor "materially aid[ed]" the violation. Id. at 22; see
also Cal. Corp. Code § 31302 (providing joint and several liability for "every
principal executive officer or director of a corporation" held liable under § 31300
"who materially aids in the act or transaction constituting the violation"). The
arbitrator reasoned that the civil actions MRFranchise failed to disclose "were those
of Rafipoor," and that Rafipoor was MRFranchise's "principal executive officer and
individual responsible for and tasked with the duty to prepare" the MRF Disclosure.
Doc. no. 32-2 at 23. Stratford contends that the Intentional Acts Exclusion and
§ 533 extend to "an insured who aids another in committing an intentional act."
Doc. no. 35 at 12.

Stratford is incorrect. Stratford cites two cases in support of its argument
that one who aids another's intentional act is subject to an Intentional Acts
Exclusion or Section 533. See Interinsurance Exch. v. Flores, 53 Cal. Rptr. 2d 18
(Ct. App. 1996); Allstate Ins. Co. v. Pira, No. C 11-3511 CW, 2013 WL 1703381, at
*12 (N.D. Cal. Apr. 19, 2013), aff'd, 608 F. App'x 496 (9th Cir. 2015). Neither case
suggests that the exclusion or Section 533 extend to Rafipoor.

In Flores, an insured drove an accomplice to an intersection so that his
accomplice could shoot someone. 53 Cal. Rptr. 2d at 20. The insured knew that his
accomplice planned to shoot someone. Id. After his accomplice committed the
shooting, the insured was arrested and entered a plea of nolo contendere to the
felony of aiding and abetting an assault with a deadly weapon. See id.; Cal. Penal

Code § 245(a)(2). After the victim's guardian ad litem brought suit against the insured, the insurer that issued the insured's automobile policy brought a separate declaratory judgment action to determine the scope of its duty to defend or indemnify the insured. See Flores, 53 Cal. Rptr. 2d at 20.

The California Court of Appeal found that the insured owed no duty to defend or indemnify pursuant to Section 533. The court explained that, "under section 533, an insurer bears no liability if the insured acted with intent to harm or committed an inherently wrongful act without legal justification." Id. at 23. To come within Section 533, one who aids and abets another's intentionally harmful or inherently wrongful act "must share the specific intent of the perpetrator." Id. at 24 (emphasis omitted). The court noted that the insured intentionally drove his accomplice to the intersection so that his accomplice would commit a shooting, and he knew that a shooting was likely. See id. In other words, the insured intended for the shooting to occur, and took action to effect his intent. Because the insured "expected harm to occur here and he acted deliberately to help bring it about," Section 533 precluded coverage. Id. at 674.

Flores is a far cry from the facts of this case. The arbitrator did not render a finding that Rafipoor shared in MRFranchise's intent to conceal information about the prior civil litigation. Rather, the arbitrator determined there was "insufficient evidence" to find that Rafipoor intended to deceive the Franchisees. Flores does not stand for the proposition that all those who take action that furthers another's intentional wrongdoing come within Section 533 regardless of the person's intent in

so acting. Rather, <u>Flores</u> supports the unremarkable proposition that one who intends to accomplish a criminal act may be subject to Section 533.

<u>Pira</u> is of even less assistance to Stratford. In <u>Pira</u>, the insured orchestrated the shooting of a person whom he was indebted to, though the insured did not himself fire the gun. 2013 WL 1703381, at *1. After the victim obtained a judgment against the insured, the insurer brought an action seeking a declaration that it owed no duty to defend or indemnify its insured for his conduct. <u>See</u> <u>id.</u> at *4. The court, however, did not reach the issue of whether Section 533 or any intentional acts exclusion applied to bar coverage. <u>See</u> <u>id.</u> at *11-12. Rather, the court found that no duty to defend or indemnify arose because the relevant policies only covered "accidents," and the shooting was not an accident. <u>Id.</u> at *11. Therefore, <u>Pira</u> does not support Stratford's contention that the Intentional Acts Exclusion or Section 533 preclude coverage of Rafipoor's liability.

Stratford also quotes language from the CFIL, which states that one who "materially aids" in another's CFIL violation is "jointly and severally liable with and to the same extent as" the person whose actions violated the CFIL. Cal. Corp. Code § 31302. To the extent Stratford intends to argue that the "same extent" language makes Rafipoor's conduct willful or otherwise imputes MRFranchise's willful violation to Rafipoor, that argument fails. Courts have characterized Section 31302 as a "secondary liability provision[ ]" that allows a victim of a CFIL violation to hold those who materially aid a company's CFIL liable "where the primary offender is insolvent or otherwise unavailable." Courtney v. Waring, 237 Cal. Rptr. 233, 236-37

(Ct. App. 1987) (quotation omitted). The statute does not impute MRFranchise's intent to Rafipoor; it merely makes Rafipoor liable for the damages flowing from MRFranchise's willful CFIL violation.

Ultimately, the arbitrator did not find that Rafipoor committed willful, intentional, or knowing misconduct. Therefore, there is no genuine dispute as to whether coverage of Rafipoor's liability is precluded by the Intentional Acts Exclusion or Section 533. Plaintiffs are entitled to summary judgment as to the non-applicability of the Intentional Act Exclusion to Rafipoor.

## CONCLUSION

Stratford's motion for summary judgment (doc. no. 29) is denied. Plaintiffs' cross-motion for summary judgment (doc. no. 28) is granted in part and denied in part. Plaintiffs' cross-motion is granted as to the Contract Exclusion, Prof. Services Exclusion, and the Intentional Acts Exclusion. Plaintiffs' cross-motion is denied as to the Prior Notice Exclusion.

This case shall be placed back on the trial docket.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 1, 2024

cc:    Counsel of Record

43